# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**JAMES GREEN, as Special Administrator of the**  **PLAINTIFFS**
**Estate of Felix Williams, deceased; et al.**

v.                                  CASE NO. 4:17-CV-00534 BSM

**SKYLINE HIGHLAND HOLDINGS LLC, et al.**                **DEFENDANTS**

## ORDER

Defendants' motion for judgment on the pleadings [Doc. No. 30] is granted.

## I. BACKGROUND

Plaintiffs bring this class action lawsuit on behalf of all residents who stayed at four defendant nursing homes between April 1, 2016, to the present. Plaintiffs allege that defendants breached statutory and contractual duties owed to plaintiffs by failing to adequately staff the nursing homes. The facts, as alleged in the first amended class action complaint, are as follows:

Residents of nursing homes often have physical and mental limitations caused by age-related physical and cognitive decline, acute or chronic illnesses, and similar conditions. They often require intensive nursing care, medical treatment, and rehabilitation. Many of the residents who live at the defendant nursing homes are elderly, disabled, confined to their beds, or unable to rise from bed or chairs independently. Some are unable to groom, feed, or clean themselves, and they rely on nursing home staff for essential primary care in addition to nursing care and medical treatment.

The State of Arkansas regulates nursing home staffing standards and requires a

minimum number of direct-care staff to be present in nursing homes to ensure that they are able to meet the needs of residents. Ark. Code Ann. § 20-10-1402(b)(1). The Arkansas Department of Human Services, the agency responsible for the licensing of nursing homes, "shall not issue or renew a license of a nursing Facility unless that Facility employs the direct-care staff needed to provide continuous twenty-four-hour nursing care and service to meet the needs of each resident of the nursing Facility and the staffing standards required by all state and federal regulations." *Id.* § 20-10-1402(a).

The amended complaint states that the nursing homes, their parent companies, and their various named administrators intentionally limited the number of licensed nurses and staff on duty. This left the nursing homes understaffed and unable to meet their residents' basic needs. As a result of this understaffing, residents were left for long periods in their own waste; they were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; they were deprived of food and water; and they suffered falls. Plaintiffs assert that defendants violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), breached various admissions agreements between the parties, committed illegal exaction, engaged in a civil conspiracy, and were unjustly enriched.

Importantly, the amended complaint does not describe how any particular defendant harmed any particular plaintiff. It does not discuss any particular damage or injury suffered by the three identified residents, who are represented by the named plaintiffs, on account of the alleged understaffing. Instead, the complaint refers to the collective conduct of all of the defendants as causing collective injuries suffered by various, unidentified nursing home

residents.

## II. LEGAL STANDARD

Granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quotation omitted). The standard for ruling on a motion to dismiss under Rule 12(c) is the same as ruling under Rule 12(b)(6) for failure to state a claim. *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are viewed in favor of the non-moving party. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). A court, however, is not bound to accept legal conclusions and formulaic recitations as facts, and "factual allegations must be specific enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. DISCUSSION

A. <u>ADTPA</u>

Defendants' motion to dismiss the ADTPA claim is granted because plaintiffs have failed to allege how they were individually harmed by defendants and have failed to allege with particularity how any particular defendant misled or deceived any resident as required by Rule 9(b). *See* Fed. R. Civ. P. 9(b).

The ADTPA broadly prohibits deceptive, fraudulent, and unconscionable trade practices. *See* Ark. Code Ann. § 4-88-107. Plaintiffs assert that defendant nursing homes, their corporate owners, and various employees engaged in deceptive and fraudulent trade practices under section 4-88-108(2) by inadequately staffing the nursing homes in violation of state and federal regulations and the parties' admission agreements. Among other things, plaintiffs allege that defendants intentionally failed to disclose in the parties' admissions agreements that the nursing homes were understaffed.

The following elements must be shown to prevail on a section 4-88-108(2) claim: (1) the defendants concealed or omitted a material fact in connection with the sale or advertisement of goods, services, or a charitable solicitation; (2) the defendants intended that others rely upon the concealment or omission; (3) the defendants' conduct was a proximate cause of plaintiffs' damages; and (4) the plaintiffs sustained damages. *Moore v. Mack's Sport Shop, LLP*, Case No. 4:16-CV-00540 KGB, 2017 WL 4350980, at *3 (E.D. Ark. Sep. 29, 2017); *Ramthun v. Bryan Career College-Inc.*, 93 F. Supp. 3d 1011, 1023–24 (W.D. Ark. 2015).

Claims brought under section 4-88-108 are subject to Rule 9(b)'s heightened pleading standard. *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084–85 (W.D. Ark.

2013); *Summerhill v. Terminix, Inc.*, Case No. 4:08-CV-00659 GTE, 2009 WL 10676533, at *4–6 (E.D. Ark. Feb. 9, 2009). Specifically, Rule 9(b) requires fraud to be pleaded with particularity. *See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). "This particularity requirement demands a higher degree of notice than that required for other claims. The claim must identify who, what, where, when, and how," *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003) (quotation omitted), and describe "the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002) (quotation omitted). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Properties II, LLC*, 781 F.3d at 1013 (quotation omitted).

First, the amended complaint does not plead any particularized injury that was suffered by the three identified residents—Felix Williams, Kesha McBrayer, and Abraham Woodward—who are represented by the named plaintiffs. Rather, the amended complaint only speaks of injuries sustained by residents of the nursing homes at large. It is indisputable that plaintiffs have alleged that unidentified residents of all four defendant nursing homes have been harmed. The amended complaint describes in detail how understaffing has caused various physical and emotional injuries to various nursing home residents. Plaintiffs, however, do not link any of defendants' deceptive or fraudulent practices to any actual damage or injury suffered by residents Williams, McBrayer, or Woodward. In fact, plaintiffs

do not even describe any actual injury or damage suffered by these three residents on account of defendants' allegedly deceptive conduct. Even assuming that Williams, McBrayer, and Woodward suffered from the same mental anguish or "loss of dignity" as some of the other class members, damages for intangible injuries are unavailable under the ADTPA in the absence of any alleged physical injury. *See FMC Corp. v. Helton*, 202 S.W.3d 490, 503 (2005).

Plaintiffs may not simply rely on allegations of harm to residents at large to state a plausible claim under the ADTPA—they must plead an injury actually suffered by Williams, McBrayer, and Woodward. *Summerhill*, 2009 WL 10676533, at *6–7. Moreover, they may not simply stand on their status as potential class representatives to overcome this deficiency. It is insufficient that "injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ("The requirements for standing do not change in the class action context."). "If the plaintiff[s] cannot maintain the action on [their] own behal[ves], [they] may not seek such relief on behalf of the class. *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

Second, the amended complaint does not allege any deceptive or misleading act by any particular defendant, but instead relies on the collective conduct of all twenty-two defendants in alleging the conduct that forms the basis of the ADTPA claim. While the amended complaint refers to a number of allegedly deceptive or misleading actions, they do

not attribute any of them to any single or distinct group of defendants and show how these actions harmed any particular plaintiff. By failing to show how any particular defendant harmed any particular plaintiff, the amended complaint appears to engage in "group pleading," which is insufficient to meet Rule 9(b)'s heightened pleading standard. *See Streambend Properties II, LLC*, 781 F.3d at 1013 (holding that plaintiff did plead with particularity under Rule 9(b) when it "attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion.").

Specifically, plaintiffs cannot meet their burden under Rule 9 by simply attributing the "alleged false statements to defendants generally" because it does not provide sufficient notice as to who is "responsible for the alleged fraud." *Trooien v. Mansour*, 608 F.3d 1020, 1030 (8th Cir. 2010). Put simply, the amended complaint simply does not provide "the who, what, when, where and how surrounding the alleged fraud . . . and what was obtained as a result." *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 807 (8th Cir. 2017) (internal quotation omitted).

For these reasons, the ADTPA claim is dismissed without prejudice.

B.  Breach of Contract

Defendants' motion to dismiss the breach of contract claim is granted as to the non-nursing home defendants because they were not parties to the agreements and granted as to the nursing home defendants because plaintiffs have failed to plead that they personally sustained damages.

Plaintiffs allege class-wide claims against all defendants for breaches of various

admission agreements between the defendants and various residents. Although plaintiffs do not submit any executed admission agreements between particular plaintiffs and defendants, a blank agreement is attached to the amended complaint and is offered as an example of the agreements typically executed by defendants and each nursing home resident. Plaintiffs assert that defendants were obliged to provide certain services to the residents under the terms of these agreements, which include providing meals and administering medical and nursing care. Defendants allegedly failed to provide some of these bargained-for services because of the understaffing.

A breach of contract claim has the following elements: (1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant; (3) a breach of that obligation; and (4) damages resulting from the breach. *Rabalaias v. Barnett*, 683 S.W.2d 919, 921 (Ark. 1985).

First, the breach of contract claim must be dismissed against all non-nursing home defendants for the same reason it was previously dismissed as to defendant Jill Lapaglia—the nursing homes were the only defendants that were parties to these agreements. Doc. No. 24 at 3; *Elsner v. Farmers Ins. Grp., Inc.*, 220 S.W.3d 633, 635 (Ark. 2005) ("[T]he presumption is that parties contract only for themselves.").

Second, the breach of contract claim is dismissed against the nursing home defendants because plaintiffs fail to plead that they personally suffered damages. As discussed above, plaintiffs have not identified any specific harm to the three identified residents as a result of the understaffing. Plaintiffs cannot simply rely on allegations of damages to unidentified

8

class members to support their breach of contract claim. *Warth*, 422 U.S. at 502 ("Petitioners must show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). Rather, plaintiffs need to plead that the defendants breached contractual obligations owed specifically to the plaintiffs and that they personally suffered damages as a result. They have failed to do so.

For these reasons, the breach of contract claim is dismissed as to the non-nursing home defendants with prejudice and as to the nursing home defendants without prejudice.

C. <u>Illegal Exaction</u>

Defendants' motion to dismiss is granted with respect to the illegal exaction claim for the same reasons as it was dismissed as to Jill Lapaglia. Doc. No. 24.

A cause of action for "illegal exaction" arises under the Arkansas Constitution, Ark. Const. Art. 16, §3, when an expenditure of public funds is "illegal, misapplied, or arbitrary." *Bowerman v. Takeda Pharmaceuticals U.S.A.*, 442 S.W.3d 839, 842–43 (Ark. 2014). Broadly, there are two types of illegal exaction claims: (1) "public funds" claims, where a plaintiff alleges that public funds are being misapplied or illegally spent, and (2) "illegal tax" claims, where a plaintiff alleges that a tax in support of the expenditure is illegal. *See id.* Critically, the wrongdoing must be "on the part of the State," and mere illegal or improper use of government funds by private actors does not give rise to an illegal exaction claim. *See id.* at 843.

Plaintiffs allege that defendants requested Medicaid payments from the state of

Arkansas for services that were not provided or not in conformity with state and federal law. In other words, plaintiffs suggest that defendants committed fraud with respect to obtaining Medicaid reimbursements. They do not suggest, however, that Arkansas is (1) illegally spending public funds to support its Medicaid program, or (2) has illegally taxed to raise revenue for it.

Plaintiffs' reliance on *Nelson v. Berry Petroleum Co.*, 413 S.W.2d 46 (1967) is misplaced. *Nelson* has been called into question by the Supreme Court of Arkansas's decision in *Bowerman*. 442 S.W.3d at 844–45. Although *Bowerman* did not explicitly overrule *Nelson*, the facts of both cases are analogous, and *Bowerman* greatly limited the scope of illegal exaction claims from what *Nelson* previously held permissible by requiring that state actors commit the illegal conduct at issue. *Id.* at 845 ("Because I can find no significant difference between the present case and the *Nelson* case, I would overrule it to the extent it conflicts with this decision.") (Danielson, J., concurring in part and dissenting in part). Therefore, plaintiffs' illegal exaction claim is dismissed with prejudice.

D.  Civil Conspiracy

Defendants' motion to dismiss the conspiracy claim is granted because there is no underlying intentional tort and because the intracorporate conspiracy doctrine prevents corporate entities from conspiring with their employees.

To prove a civil conspiracy, one must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means,

to the injury of another." *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 331 (Ark. 2010) (citing *Dodson v. Allstate Ins. Co.*, 47 S.W.3d 866, 876 (Ark. 2001)). Importantly, a claim for civil conspiracy must be based on an intentional tort. *Foster v. Boch Indus.*, Civ. No. 08-5093, 2009 WL 485407, at *5 (W.D. Ark. Feb. 26, 2009). Thus, "[a] plaintiff alleging a claim for civil conspiracy must state a prima facie case for the underlying tort in order to support a conspiracy claim." *Tuohey v. Chenal Healthcare*, LLC, 173 F. Supp. 3d 804, 812 (E.D. Ark. 2016) (citation omitted); Ark. Code Ann. § 16-55-205(b)(1); Ark. Model Jury Instr.—Civil, AMI 713 & 714.

First, plaintiffs fail to plead an underlying tortious act committed by any of the defendants. Every claim raised in the amended complaint has either been dismissed or may not be used to plead the basis of a civil conspiracy. Indeed, even supposing that the ADTPA or illegal exaction claims are sufficient predicates for civil conspiracy, they have been dismissed. Similarly, a civil conspiracy claim cannot be brought on the basis of a breach of contract or unjust enrichment, and both claims have been dismissed. *Tuohey*, 173 F. Supp. 3d at 812. For these reasons, plaintiffs have failed to allege an underlying tort supporting the conspiracy claim, and it is therefore dismissed. *Id.*; *see also Lane v. Chowning*, 610 F.2d 1385, 1390 (8th Cir. 1979) ("We have already determined that [plaintiff] has failed to establish either a factual or a legal basis for recovery on any of his several allegations. It follows, then, that no overt act has been established which is a necessary element in establishing the existence of a civil conspiracy.").

Second, the plaintiffs do not address the intracorporate conspiracy doctrine which

independently required the dismissal of the conspiracy claim as to defendant Jill Lapaglia in a prior order. *See* Doc. No. 24 at 5–6. The reasons given by that order similarly require dismissal of the conspiracy claim as to all of other defendants. *See id.*

For these reasons, the civil conspiracy claim is dismissed with prejudice.

E. Unjust Enrichment

Defendants' motion to dismiss the unjust enrichment claim is granted because plaintiffs have not alleged that the non-nursing home defendants received anything of value from plaintiffs. Plaintiffs assert that they are not bringing the unjust enrichment claim against the nursing home defendants because the existence of the admission agreements likely precludes such a claim. *See Stokes v. Stokes*, 491 S.W.3d 113, 121 (Ark. 2016) ("There can be no unjust enrichment in contract cases . . . [u]njust enrichment is a quasi-contract claim."); *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606 (8th Cir. 1999) (holding that Arkansas law does not permit unjust enrichment as a means of recovery when an express contract exists between the parties).

"To find unjust enrichment, a party must have received something of value, to which he or she is not entitled and which he or she must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable . . . In short, an action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *Campbell v. Asbury Automotive, Inc.*, 381 S.W.3d 21, 37 (Ark. 2011).

Critically, the first amended complaint does not allege that the non-nursing home

defendants received any financial benefit or thing of value directly from the plaintiffs. Rather, these defendants are alleged to have been unjustly enriched when the nursing homes defendants received payments from their residents and simultaneously violated state and federal regulations in their ordinary course of business. The plaintiffs do not attempt to explain or trace the payments made from residents to the non-nursing home defendants, and it appears from the facts that only the nursing home defendants received something of value from the plaintiffs.

Therefore, the unjust enrichment claim is dismissed without prejudice.

F. Leave to Amend

Plaintiffs have not sought leave to amend their complaint in the event that their claims are dismissed. There is no need to provide such a remedy *sua sponte*. *See, e.g., Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 665 (8th Cir. 2012).

IV. CONCLUSION

For these reasons, defendants motion for judgment on the pleadings [Doc. No. 30] is granted. The breach of contract claim as to the non-nursing home defendants, illegal exaction claim, and civil conspiracy claims are dismissed with prejudice, and all remaining claims are dismissed without prejudice.

IT IS SO ORDERED this 12th day of June 2018.

_____
UNITED STATES DISTRICT JUDGE